

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
WILL WILSON
ATTORNEY GENERAL

Honorable R. C. Neaves
County Auditor, Grayson County
Sherman, Texas

Dear Sir:

Opinion No. O-5943
Re: Proper method of handling
expenditures of county funds
for aid of child welfare ad-
ministered by Child Welfare
Board.

Your letter of March 21, 1944, requesting the opinion of this
department on the above subject, together with your supplementary letter
of April 17, 1944, reciting additional facts relative to your question
number three, have been received. We quote from your first letter as
follows:

"Please furnish me a written opinion on the following
questions:

"1. May the Commissioners' Court of Grayson County,
Texas, appropriate, and advance to, the County Child
Welfare Board, a specific sum of money to be expended by
said County Child Welfare Board as they deem necessary
for the aid of dependent, etc., children, and, said
County Child Welfare Board provide the Commissioners'
Court later with a report showing the various purposes
of Child Welfare aid such money was used?

"2. May the Commissioners' Court of Grayson County,
Texas, delegate the authority to said County Child
Welfare Board, to place dependent children in various
private homes at $20.00 each per month, same to be paid
out of County funds, without the approval of the Com-
missioners' Court in each case prior to said child being
placed in said private home?

"3. May the Commissioners' Court of Grayson County,
Texas, at the request of said County Child Welfare Board,
allow and order paid, expense of a dependent child at
$20.00 per month, when such money is used in part payment
of the expenses of said child attending St. Joseph's
Academy, Sherman, Texas? (Article 1, Section 7,
Constitution of Texas) * * * * * * * * "

The supplement to your question number three reads as follows:

"Said child was placed in the custody of a private home
by the Child Welfare Board, at an expenditure of $20.00 per
month for board, to be paid by Grayson County, and in turn
said private home placed the child in St. Joseph's Academy.
The private home collects the $20.00 per month from the
County and in turn pays all expenses of said child attend-
ing the Academy, such as board, room, tuition, books and
clothes.

"The child resides at the Academy full time except week
ends and holidays."

From your letter of March 21, 1944, we now quote your question
number four as follows:

"May the Commissioners' Court of Grayson County, Texas,
at the request of said County Child Welfare Board, allow and
order paid a monthly salary from county funds for a clerk
or stenographer to said Child Welfare Board, when same has
been appropraited in the County budget?"

Article 2351, Section 11, Revised Civil Statutes, provides:

"Each Commissioners Court shall:  Provide for the sup-
port of paupers and such idiots and lunatics as cannot be
admitted into the lunatic asylum, residents of their county,
who are unable to support themselves.  By the term resident
as used herein, is meant a person who has been a bona fide
inhabitant of the County not less than six months and of
the State not less than one year."

Article 695a, Sections 4 and 5, Revised Civil Statutes, provides:

"Sec. 4.  The Commissioners' Court of any county may
appoint in said county seven persons, resident therein,
who shall serve without compensation and hold office during
the pleasure of the Commissioners' Court, who shall consti-
tute a Child Welfare Board for the County, which Child
Welfare Board shall select its own chairman.  The Child
Welfare Board shall perform such duties as may be required
of it by said Commissioners' Court and Board of Control in
furtherance of the purposes of this Act.  The County Com-
missioners' Court of any county may remove any member of
such County Welfare Board for just cause.

"Sec. 5.  The Board of Control, through said County
Welfare Board, shall work in conjunction with the County
Commissioners' Court, Juvenile Boards, and all other of-
ficers and agencies whose purpose is for the protection

of the children described herein, and the Board of Control
is hereby authorized to use and allot any funds, that may
be specifically appropriated for such purposes, by the
Legislature, that may be necessary in jointly establishing
and maintaining, together Juvenile Board or other County
or City Board or other agency, homes, schools, and insti-
tutions for the care, protection, education and training
of the class of children sought to be protected by the
provisions hereof."

Under Article 695c, Vernon's Annotated Civil Statutes, all the
rights, powers, and duties, including those enumerated in Section 5,
Article 695a, of the Division of Child Welfare of the State Board of
Control were transferred to the State Department of Public Welfare;
the article further providing, in Section 39 thereof, as follows:

"No provision of this Act is intended to release the
counties and municipalities in this State from the specific
responsibility which is currently borne by those counties
and municipalities in support of public welfare, child welfare,
and relief services. Such funds which may hereafter be
appropriated by the counties and municipalities for those
services may be administered through the county or district
offices of the State Department, and if so administered,
shall be devoted exclusively to the services in the county
or municipality making such appropriation." (Emphasis ours)

Section 40, Article 695c, Vernon's Annotated Civil Statutes,
provides as follows:

"County Child Welfare Boards established or hereinafter
appointed in conformity with Section 4, Acts of 1931, Forty-
second Legislature, page 323, Chapter 194, shall function
and/or continue to function as provided therein, and the Com-
missioners Court of any county may appropriate funds from its
general funds or any other available fund, for the adminis-
tration of such County Child Welfare Boards and provide for
services to and support of children in need of protection
and/or care." (Emphasis ours)

Article 1580, Vernon's Annotated Civil Statutes, authorizes the
commissioners' court to appoint agents to act in its behalf for any
purposes authorized by law and the acts so done shall be valid and ef-
fectual to bind such county to all intents and purposes. Ministerial
executive duties may be delegated by the commissioners' court. Gal-
veston County v. Gresham, 220 S. W. 560; Boydston v. Rockwall County,
24 S. W. 272. At 11 Texas Jurisprudence 574, it is said that "the
commissioners' court is empowered to appoint agents for the accom-
plishment of purposes authorized by law." Purely administrative acts
may be ratified when done by another without authority. Williams v.
Pure Oil Company, 78 S. W. (2d) 929.

The rights, powers, and duties of the Juvenile Boards of the counties as enumerated in Articles 5139-5142 need not be discussed here but in subdivision (d) of Section 9, Article 695a, certain restrictions were placed on the Child Welfare Board as follows:

"(d) Provided that no provision of this Act shall in any manner interfere with the powers and functions of *** the Juvenile Boards of any of the counties authorized by Title 82."

The authorities above recited confer upon the commissioners' court power to expend funds for the purposes enumerated in the Child Welfare Act but it is fundamental that county funds may be expended only for purposes authorized by law. Section 40, Article 695c, supra, expressly provides that funds may be expended for the Administration of the Board and to provide for services to and support of children in need. Therefore, in answer to your question number one, we are of the opinion that the commissioners' court may direct the Child Welfare Board to perform such duties as it deems necessary in furtherance of the purposes of the Act and advance of the said Board funds to be expended for the protection of the children herein named, the Board reporting later to the commissioners' court the specific items of expenditure. However, we here point out that such action of said Board is at all times subject to the control and final determination of the commissioners' court in so far as the disposition of county funds is concerned.

The necessity of placing children in private homes was anticipated by the Legislature and in Article 4442A the licensing of "Childrens' Boarding Homes" is authorized. Upon the adoption of the Child Welfare Law, one of its provisions, Section 8 of Article 695a, Vernon's Annotated Civil Statutes, transferred the duties and responsibilities of the State Board of Health, provided in Article 4442A, to the Division of Child Welfare.

Section 18, Article 695c, Vernon's Annotated Civil Statutes, reads as follows:

"The amount of assistance which shall be given under the provisions of this Act with respect to any needy dependent child shall be determined by the State Department through its district or county agencies in the district or county in which the dependent child resides with due consideration to the income and other resources of such child and in accordance with the rules and regulations of the State Department. The amount of assistance given shall provide such dependent child with a reasonable subsistence compatible with decency and health, within the limitations and provisions of the Constitution of Texas as are now provided, or may hereafter be provided."
(Emphasis ours)

Within its discretion and in conjunction with the commissioners'
court and the State department a finding by the County Child Welfare
Board that a sum of $20 per month is reasonable for the subsistence
of a child is warranted. The placing of a child in a private home and
the payment to such home of $20 a month out of county funds, is author-
ized by the statutes and the commissioners' court may direct the Board
to place the children without requiring separate approval for each in-
dividual case as this constitutes a lawful delegation of ministerial
executive duty as contemplated by Article 1580. This is in answer to
your question number two.

Legislative acts have made it possible for the State Department
of Public Welfare, the Commissioners' Courts and the County Child
Welfare Board, working in co-operation with each other, to provide for
the protection of delinquent, dependent, and underpriviledged children.
Section 5, Article 695a, supra.

Private citizens, in taking a child into their homes, assume
grave responsibility and their actions are zealously scrutinized by
the State Department of Child Welfare and the County Child Welfare
Board, working in conjunction with the Commissioners' Court. Any
change of condition or circumstance affecting the welfare of the child
is subject to the action of the Welfare Agencies and the Commissioners'
Court. These utterances are clearly justified from a study of the
pertinent provisions of law. The benevolent act of the foster parents
imposes upon them the obligation to do all things compatible with the
purposes of the statutes, but we cannot say that they are precluded
from spending their own money to afford their ward privileges and
opportunities commensurate with those afforded by their station in life.

Under the facts in the situation presented by your question No.3,
the private home receives county funds for subsistence afforded the
child. With the approval of the Child Welfare Board, the home placed
out said child with St. Joseph's Academy for board and schooling for
five days out of each week. For the remaining days of the week the
child resides with its foster parents.

If it were determined by the Commissioners' Court and the County
Child Welfare Board that the part-time boarding of the child in St.
Joseph's Academy was for the best interest of the child, and that the
sum of $20.00 per month is adequate and necessary for the services and
support of such needy child, and no part of such sum is to be expended
for tuition, we see no legal restriction which would bring this case
into a different category from those where such child does not leave
the private home. The fact that the child receives educational train-
ing at the academy, if not paid for out of county funds, would not af-
fect in any way the authority of the Commissioners' Court to expend
county funds for subsistence of the child.

In respect to the expenditure of the $20.00 per month paid by the

county to provide for services and support of such needy children, we must here caution that such services and support are such as are commonly termed "subsistence", and in no circumstances would include the education of such children. County funds may be expended only for those purposes expressly authorized by law. Public money is provided by appropriations for the Public Free School System and State Institutions of Learning, of which the Commissioners' Court is well advised. The public free schools are open to all children of the proper age, and a county would not be authorized to divert its funds created for the specific purpose of subsistence to needy and dependent children to any school fund, public or private. We reiterate that no part of such $20.00 subsistence grant could be used for tuition payment; and if such sum becomes more than enough to pay for such subsistence, then it shall be the duty of the Commissioners' Court to reduce such payment to the exact amount required.

However, to say that such child could not be placed in a private school at private expense, because of the fact that such underprivileged child was unfortunate enough to have to accept $20.00 per month subsistence allowance from the county, would be to deny the child an equal opportunity with the more fortunate and would, in our opinion, defeat the purpose of the Child Welfare Act.

Section 35, Article 695c, reads in part, as follows:

"* * * This Act shall be liberally construed in order that its purposes may be accomplished as equitably, economically, and expeditiously as possible."

Bearing in mind the restrictions pointed out above, we therefore advise that in our opinion the expenditure described in question No. 3 is authorized, and we answer said question in the affirmative.

The "administration" of a County Child Welfare Board in providing services to and support of children in need of protection and care, of necessity requires the usual and customary detail work, correspondence and other functions found in other governmental and civil undertakings. The members of the Child Welfare Board, each serving without compensation, certainly would not be called upon to do stenographic and other similar work, in many instances requiring the efforts of one skilled in the duties to be performed, and the delegation of a responsibility to a board without giving it the means with which to accomplish the end would not be reasonable to assume. Every function performed by the Board or its stenographer would be a direct benefit to the children within the Board's province. Accordingly, in answer to your question number four, we are of the opinion that funds can be legally expended by the commissioners' court in acquiring the services of a stenographer.

We respectfully call your attention to our opinion No. 0-2721,

relating to the specific duties and functions of the County Child
Welfare Board as distinguished from those of the Juvenile Board.

We do not think it necessary to discuss the functions of the
State Welfare Board and a State Welfare worker in relation to their
aid to and cooperation with the respective county welfare boards.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Harris Toler
                    Harris Toler
                        Assistant

By s/Robert L. Lattimore, Jr.
                    Robt. L. Lattimore, Jr.
                        Assistant

HT:RLL:ff:wc

APPROVED JUNE 27, 1944
 s/Geo. P. Blackburn
ATTORNEY GENERAL OF TEXAS    (Acting)

This Opinion Considered And Approved In Limited Conference